■ General Mills, Inc., Respondent-Appellant, v Filmtel International Corporation et al., Appellants-Respondents. [599 NYS2d 820] —Order and judgment (one paper) of the Supreme Court, New York County (Irma Vidal Santaella, J.), entered January 10, 1992, which declared that plaintiff has the exclusive right to license the exhibition and distribution of the animated cartoon series known as "Rocky and His Friends" via cable television, but not via home-use videocassettes and videodiscs, and which dismissed defendants' counterclaim and affirmative defenses, unanimously modified, on

251

the law, to the extent of denying summary judgment as to the right to distribution via cable television and, except as so modified, affirmed, without costs.

By way of a letter agreement and a series of amendments executed in 1959 and 1960, the parties agreed that plaintiff would have exclusive rights to exhibit "on television and in theaters without limitation" a copyrighted series known as "Rocky and His Friends", based on characters created by cartoonist Jay Ward (see, General Mills v Filmtel Intl. Corp., 178 AD2d 296). The nature of the ownership right granted is defined in the initial agreement as "an exclusive right in perpetuity to all exhibition rights (television and theatrical)".

In 1990, plaintiff attempted to exercise the right to exhibit the cartoons on cable television and to market them in retail-distributed compilations for use with home videocassette players. As a result of defendants' opposition, plaintiff asserts that it lost, inter alia, a multi-million-dollar deal with a cable-only network. Plaintiff thereafter commenced this action seeking declaratory relief and monetary damages.

Upon this appeal, defendants argue that "cablevision" (their term for cable television) and home video differ substantially from television as media. Plaintiff, however, contends that both over-air broadcasting and cable distribution constitute "television" in that the consumer uses a television receiver to watch programming in both instances. Supreme Court determined that the use of the language "without limitation" is sufficiently expansive to grant plaintiff rights with respect to cable television, but does not extend to distribution by means of videocassettes.

We agree with Supreme Court that the license granted to plaintiff does not extend to videocassettes or videodiscs for home use because these media comprise "an entirely different device involving an entirely different concept and technology from that involved in a television broadcast" (Tele-Pac, Inc. v Grainger, 168 AD2d 11, 16, lv dismissed 79 NY2d 822). However, it is not clear that by the grant of an exclusive right to exhibit the cartoons "on television * * * without limitation" the parties' agreement contemplates a transmission medium which, although in existence at the time it was executed, had not yet been commercially exploited as a system for the mass distribution of paid television programming.

During the 1950's and 1960's, cable television served a different purpose from that which it serves today. As one report stated, there "are certain areas in the United States

* * * where the terrain is such that television reception is either poor or impossible because of natural barriers * * * Certain enterprising groups in these areas * * * arranged for antennas to receive broadcast television programs at a point where reception is good and to transmit the programs to the communities where such good reception is desired * * * From the antenna point of reception to the home where the family television receiver is located, there is usually a 'closed circuit' connection" (Kupferman, Rights In New Media, 19 Law & Contemp Probs 172, 179-180 [1954]).

This case turns on the scope which the parties accorded to the term "television" in the letter agreement and its successive amendments drafted in 1959 and 1960. The collective agreement must be regarded as ambiguous in this regard and resort must be had to extrinsic evidence to ascertain the intent of the parties. Thus, a question of fact is presented with respect to the construction of the right granted, and summary judgment is inappropriate (Hartford Acc. & Indem. Co. v Wesolowski, 33 NY2d 169, 172).

We have considered the remaining arguments on the crossappeals and find them to be without merit. Concur—Murphy, P. J., Milonas, Ross and Rubin, JJ.