S95G1256. MAY DEPARTMENT STORE et al. v. CENTER DEVELOPERS, INC. et al.

(471 SE2d 194)

HUNSTEIN, Justice.

This appeal of seven consolidated cases from the Court of Appeals is before us pursuant to our grant of certiorari to consider the question whether the waiver of subrogation clauses contained in certain leases are valid or whether they are violative of OCGA § 13-8-2. The parties are set forth in the Court of Appeals' opinion, *Southern Trust Ins. Co. v. Center Developers*, 217 Ga. App. 215 (456 SE2d 608) (1995) and will not be repeated here.[1] With two exceptions, appellants are the subrogated insurers of tenants who, pursuant to their respective leases, occupied premises in a shopping center and sustained losses as a result of two fires. Both May Department Store (hereinafter "May"), owner of tenant Loehmann's, and Association of April Marcus d/b/a Men's Wear Outlet (hereinafter "Men's Wear Outlet"), a tenant, are also appellants. Appellees are the owner and manager of the shopping center and persons involved in the installation and maintenance of certain neon signs alleged to have caused the fires.

Appellees filed motions for summary judgment contending that the waiver of subrogation clause in each lease barred the claims of insurer-appellants. With the exception of May,[2] the Court of Appeals affirmed the trial court's grant of summary judgment to appellees.

1. OCGA § 13-8-2 (b) provides in pertinent part that agreements

purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable

when made in connection with or collateral to a contract concerning the construction, repair, or maintenance of a building. Such contracts include commercial leases. *Borg-Warner Ins. Fin. Corp. v. Executive Park Ventures*, 198 Ga. App. 70 (400 SE2d 340) (1990). However, clauses in leases and other contracts pursuant to which the parties clearly express their mutual intent to shift the risk of such loss to insurance do not violate OCGA § 13-8-2 (b). *Tuxedo Plumbing &c. Co. v. Lie-Nielson*, 245 Ga. 27 (262 SE2d 794) (1980). In *Tuxedo*, this

---

[1] Neither Southern Trust Insurance Company, as subrogee of tenant Argus, Inc., nor Hartford Accident & Indemnity Company, in its capacity as subrogee of tenant The Finish Line, Inc., joined in the application for certiorari and neither are parties to this appeal.

[2] See Division 3, infra.

Court considered a commercial plumbing contract, which, unlike the leases in issue here, did not include a separate waiver of subrogation clause. This Court nevertheless held that the intent to shift the risk of loss to insurance was inferable with the requisite clarity from a clause in the contract which obligated the owner of the apartments involved to purchase and maintain fire insurance with extended coverage on the property. Reaching this conclusion, we noted that

"[i]t has been recognized by numerous authorities that where parties to a business transaction mutually agree that insurance will be provided as a part of the bargain, such agreement must be construed as providing mutual exculpation to the bargaining parties who must be deemed to have agreed to look solely to the insurance in the event of loss and not to liability on the part of the opposing party." [Cits.]

Id. at 28.

Appellants urge this Court to read *Tuxedo* in conjunction with language in *Central Warehouse &c. Corp. v. Nostalgia, Inc.*, 210 Ga. App. 15 (1) (435 SE2d 230) (1993) to invalidate the waiver of subrogation clauses in the leases before us and to establish a "bright line rule" which would render unenforceable any clause under which the parties purport to waive subrogation if their contract does not also include a requirement of the purchase of first party property insurance. The parties in *Central Warehouse* elected to use language in the waiver of subrogation clause which referred to losses arising out of "insurable" rather than *insured* hazards. In the absence of a requirement that either party purchase insurance, the Court of Appeals held that this choice of terms did not "clearly evince" the parties' intent to shift the risk of loss to insurance. Id. at 16 (1). The Court of Appeals has subsequently upheld subrogation clauses which waived recovery for losses arising out of " 'any cause *insured against* under the standard form of fire insurance policy . . .' " (emphasis in original), *Glazer v. Crescent Wallcoverings*, 215 Ga. App. 492, 493 (451 SE2d 509) (1994), although neither the landlord nor the tenants were specifically obligated under their respective leases to purchase property loss or damage insurance. The court distinguished the *Central Warehouse* clause as having referred to *insurable* rather than *insured* risks, which the *Glazer* court construed as not necessarily contemplating the purchase of insurance nor limiting the application of the purported waiver to situations in which there was insurance. *Glazer*, supra at 494 (1). Unlike the *Central Warehouse* lease, the *Glazer* waiver clauses were explicitly labeled as such in the leases and by *"their terms do not apply in the absence of insurance."* (Emphasis in original.) *Glazer*, supra at 494 (1). Thus, the court held, it was not

also necessary to include a mandatory insurance provision to clearly express the parties' intent to look solely to the insurer. The *Glazer* court further disapproved *Central Warehouse* to the extent that its language suggested that the intent of the parties to shift the risk of loss to an insurer may be inferred only when there is a mandatory insurance purchase provision in the lease.

With one exception, all of the leases before us are standard forms containing identical waiver clauses. These clauses in Article XXI of each lease are captioned "WAIVERS OF SUBROGATION" and read as follows:

> Each of the parties hereto waives any and all rights of recovery against the other or against any other tenant or occupant of the building or the Shopping Center, or against the officers, employees, agents, representatives, invitees, customers and business visitors of such other party or of such other tenant or occupant of the building or the Shopping Center, for loss of or damages to such waiving party or its property or the property of others under its control arising from any cause insured against under the standard form of fire insurance policy with all permissible extensions and endorsements covering additional perils or under any other policy of insurance carried by such waiving party in lieu thereof. Such waivers shall be effective only so long as the same is permitted by each party's insurance carrier without the payment of additional premium.

These clauses, each of which had the consent of the tenant's respective insurer, unequivocally express the mutual intent of the landlord and the tenant to shift the risk of loss and to look solely to insurance coverage for loss or damages incurred by either party.

Contrary to the contention of insurer-appellants, who, having become subrogated to their insureds' claims by reason of their payment, now seek to reallocate their losses by filing suit and recovering damages from appellees, these clauses are not statutorily-proscribed contracts of indemnity. Unlike indemnity agreements, neither landlord nor tenant is being held harmless by the other for damage caused by the sole negligence of the promisee. The parties have merely *agreed, with the consent of their insurers and before the commencement of the lease term*, not to sue each other, through their subrogated insurers, for loss or damage allegedly attributable to the negligence of one of the parties, but instead to shift the risk of loss to insurance. Moreover, unlike indemnity clauses, the potential benefit or detriment of the waiver of subrogation may inure to either party and its respective insurer. Subrogation requires the existence of a contract to pay (in-

surance) and the actual payment of the claim; in the absence of insurance and payment thereunder, there can be no subrogation and hence no waiver. Accordingly, the absence of an express requirement to maintain insurance does not alone diminish the clarity of these parties' intent; inasmuch as subrogation arises only upon the payment of an insured claim, the parties' mutually-bargained-for covenant to waive subrogation patently contemplates the existence of insurance coverage and would be rendered meaningless in the absence of the same. A requirement that the parties purchase insurance is a significant indication that they intended to shift the risk of loss, but it is not essential to a valid and legal waiver of subrogation and where their intent so to do is otherwise clear, that agreement will be upheld.[3]

2. It is necessary, therefore, to address the effect of additional language which appears in two of the leases before us, the Shoe Secrets lease and the Men's Wear Outlet lease. Both are standard form leases with the waiver of subrogation clause discussed in Division 1. However, both contain additional language which, it is contended, is indicative of a contrary intent. The Shoe Secrets lease "Loss and Damage" provision, section 8.02, contains the following additional typewritten statement: "The foregoing to the contrary notwithstanding, Landlord shall not be relieved of liability in the event of loss or damage caused by the acts of negligence of the Landlord." Next follows a reference to section 8.02 (a) on an attached rider. That section, also captioned "Waiver of Subrogation," specifically requires the landlord to cause fire and extended coverage policies carried by it on the "Premises" (defined in the lease as the area actually leased to the tenant) to include a waiver of the insurer's rights against the tenant by way of subrogation. Section 8.02 (a) also sets forth a reciprocal agreement on the part of the tenant to cause its public liability insurance policies to contain waivers by the insurer of rights against the landlord. Contrary to the construction urged on appeal, the typewritten addition to the "Loss and Damage" provision does not conflict with that section, nor does it express any intent contrary to the printed waiver of subrogation provision: it merely recognizes that, to the extent that insurance does not cover loss or damage, nothing in that section is intended to indemnify the landlord, i.e., to relieve the landlord of liability for its sole negligence in violation of OCGA § 13-8-2 (b). Likewise, the rider to the waiver of subrogation clause printed in the body of the lease is an expansion, not a contradiction, of that

---

[3] *Macon-Bibb County Industrial Auth. v. Nord Bitumi, U. S.*, 77 F3d 417 (11th Cir. 1996), though illustrative of the convenience of an insurance requirement in connection with the construction of a waiver of subrogation clause, neither establishes a "bright line rule," nor is it persuasive as to either the necessity or correctness of such a rule.

clause, requiring specifically that the respective policies of insurance which the parties secure contain waivers by the insurers. When the lease is read as a whole, which the principles of contract interpretation require (OCGA § 13-2-2 (4)), we remain unpersuaded that the parties intended anything other than to shift the risk of loss to insurance, to the extent thereof.

Similarly, the "Loss and Damage" section of the Men's Wear Outlet lease, which relieves the landlord of liability "except through its own negligence or [that] of its employees, agents or assigns," does not dilute the expression of the parties' intent, in the waiver of subrogation clause, to look to insurance to the extent of its coverage, but does recognize that if and to the extent a loss exceeds coverage, the landlord may not be indemnified against its own negligence in contravention of the public policy and the law of the state. The parties' recognition that insurance may not fully cover a loss, coupled with their agreement, in that event, to hold harmless the landlord, *except for its own negligence*, does not diminish the clarity of the agreement to shift the risk of loss to insurance and is in no way a violation of public policy. We do not agree that *Alimenta Processing Corp. v. South Ga. Pecan Co.*, 185 Ga. App. 330 (364 SE2d 84) (1987) compels a different conclusion with respect to either of these leases.

3. The one lease that differs from those discussed in Divisions 1 and 2 is the Loehmann's lease, the subject of suit by plaintiffs May as owner of Loehmann's and by Michael Maughan and David Duberry. Maughan and Duberry represented themselves and other underwriters at Lloyds, London and at the Institute of London Underwriters, respectively (hereinafter collectively referred to as the "Interested Underwriters"), who subscribed the policy insuring May and Loehmann's. On appeal of the trial court's grant of summary judgment in favor of appellees, the Court of Appeals reversed, concluding that Maughan and Duberry were not parties to the appeal and that it could not be determined from the record whether the required insurance actually covered May's losses as a co-insured. Appellants contend and appellees acknowledge that the Interested Underwriters are parties to this appeal and we agree. We also agree with the Court of Appeals' conclusion that the waiver of subrogation clause in the Loehmann's lease is a valid one based on the criteria we have set forth hereinabove. That clause, captioned as such and as section 11.3 of the lease, provides in pertinent part that in the event of the damage or destruction of the premises or contents

by fire or other cause *recoverable* by insurance maintained by either, the rights of either against the other with respect to such damage or destruction are hereby waived and released. Both parties shall require each of the insurers under

policies of insurance which either procures or maintains in relation to the Demised Premises or its contents, to waive any and all rights of subrogation . . . .

(Emphasis supplied.) Section 11.1 requires the landlord to maintain fire insurance on the premises, naming the tenant as an insured thereunder. It is contended that the word "recoverable" is synonymous with "insurable," thus rendering the clause unenforceable under *Central Warehouse*, supra.[4] We regard the language of this lease, read as a whole, as manifestly expressing the intent of the parties to shift the risk of their losses to insurance, to the extent thereof, and we will not thwart that intent by the application of a checklist of required or proscribed words. Accordingly, we hold that the claims of the Interested Underwriters are barred by the waiver of subrogation. However, we agree with the Court of Appeals that to the extent that May's losses may not have been covered by the required insurance, summary judgment was inappropriate.

With the exception, noted above, of the claims of the Interested Underwriters, the judgment of the Court of Appeals with respect to all parties to this appeal is affirmed. Recognizing the Interested Underwriters as parties to this appeal, we hold their claims barred by a valid waiver of subrogation.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MAY 28, 1996 —
RECONSIDERATION DENIED JUNE 25, 1996.

*McPhail & Marmur, Jon B. McPhail, Sari B. Marmur,* for appellants.

*Duncan & Mangiafico, George E. Duncan, Jr., Leslie P. Becknell, Long, Weinberg, Ansley & Wheeler, James H. Fisher II, Bach & Hulsey, Robert J. Hulsey, Goodman, McGuffey, Aust & Lindsey, Edward H. Lindsey, Jr., Lokey & Smith, Malcolm P. Smith, Jon W. Burton, G. Melton Mobley, Chambers, Mabry, McClellan & Brooks, F. Scott Young,* for appellees.

---

[4] It is also contended that there is no insurance requirement, but this is plainly erroneous in light of section 11.1. There is no requirement that either party insure tenant's inventory.