[725 NYS2d 312]

THE GAP, INC., et al., Appellants, v RED APPLE COMPANIES, INC., et al., Defendants, and ROBERT CARMEL et al., Respondents.

First Department, May 8, 2001

APPEARANCES OF COUNSEL

*Michael J. Sommi* of counsel, New York City (*Elaine M. Rinaldi* on the brief; *Cozen & O'Connor,* attorneys), for appellants.

*Steven B. Prystowsky* of counsel, New York City (*Jonathan A. Murphy* on the brief; *Lester Schwab Katz & Dwyer, L. L. P.,* attorneys), for respondents.

## OPINION OF THE COURT

SULLIVAN, P. J.

Plaintiffs, The Gap, Inc. and Rite Aid Corporation of New York, Inc., were first floor tenants under separate leases at 2551 Broadway in Manhattan, a two-story building owned by defendants Robert Carmel, Kenneth Carmel and Peter Korn and managed by defendant Williams Real Estate. The demised premises were directly above a Sloan's Supermarket, which occupied the basement.

This lawsuit is an outgrowth of a fire, on June 17, 1996, incendiary in origin, that started in the paper goods aisle of Sloan's. According to the fire report, the fire quickly spread to other areas of the supermarket but did not extend beyond, although heavy smoke did cause extensive damage to plaintiffs' demised premises on the floor above. A post-fire inspection revealed the absence of a sprinkler system in Sloan's and a totally inadequate means of egress from the second-floor dance hall located above plaintiffs' premises. On May 13, 1996, one month prior to the fire, the City issued a violation notice to the owners for "failure to provide required means of egress for every floor."

On the date of the fire The Gap maintained a property insurance policy underwritten by five insurers providing coverage for personal property, betterments and improvements and business interruption. As a result of the fire, The Gap allegedly sustained covered losses of $1,321,091.76, representing damage to its personal property, as well as a significant business interruption loss, but, because of its $1 million deductible, recovered only $321,091.76 under the policy. While Rite Aid received $1,075,417.49 from its insurer for its property loss, it maintained a $10,000 policy deductible and was uninsured for its business interruption loss of $520,733. Thus, it sustained an uninsured loss of $530,733.

Plaintiffs thereafter commenced this action against, *inter alia*, the building owners and their managing agent (collective-

ly the owners), seeking to recover for their uninsured losses, including the deductible amounts under their respective policies, as well as the losses paid by their respective insurers, who are subrogated to the right to recover for such losses. Plaintiffs allege negligence and breach of contract for failing to maintain the building in a safe and non-hazardous condition, for failing to provide proper and adequate fire protection equipment, in particular, a sprinkler system, and for violating the Administrative Code of the City of New York in contravention of its lease obligations.

Plaintiffs do not allege that the owners breached any contractual obligation under article 9—"Destruction, Fire and Other Casualty"—of the leases, which requires the landlord to repair the fire-damaged demised premises. In their answer, the owners asserted, *inter alia*, that, by virtue of the respective leases' waiver of subrogation clauses, plaintiffs waived all claims, rights and causes of action based on subrogation, including the amount of their respective deductibles, and, further, that they are also precluded by other lease provisions from recovering for any uninsured loss, based on business interruption.

The Gap's lease's waiver of subrogation provision, found in article 57 (B) provides, in pertinent part, as follows:

> *"Destruction, Fire and Other Casualty (referring to Article 9). * * ***
>
> "B. Each party, on its own behalf and on behalf of any one claiming under or through it by way of subrogation or otherwise, hereby waives all claims, rights and causes of action against the other party, for any loss or damage in or to the building or other improvements located on the real property described in page 1, the demised premises and its contents caused by any risk insured against under any insurance policies carried by either party or required to be carried under this lease at the time of such loss or damage, even if such loss or damage may have been caused by the negligence of the other party, its officers, employees, contractors, agents or invitees."

The Rite Aid lease, article 9 (e), contained a waiver of subrogation clause, which, in pertinent part, provided as follows:

> "Notwithstanding the foregoing, each party shall

look first to any insurance in its favor before making any claim against the other party for recovery for loss or damage resulting from fire or other casualty, and to the extent that such insurance is in force and collectible and to the extent permitted by law, Landlord and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise. The foregoing release and waiver shall be in force only if both releasors' insurance policies contain a clause providing that such a release or waiver shall not invalidate the insurance."

Neither lease required the tenant to obtain its own fire insurance on contents. Nor did the owners' insurance provide coverage for the tenants' contents.

Both leases, written on the standard form of store lease promulgated by The Real Estate Board of New York, Inc., contained an article 4, designated "Repairs," which, insofar as is pertinent, provided:

"Except as specifically provided in Article 9 or elsewhere in this lease, there shall be no allowance to the Tenant for the diminuation [*sic*] of rental value and no liability on the part of Landlord by reason of inconvenience, annoyance or injury to business arising from Landlord, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof. The provisions of this article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty which are dealt with in article 9 hereof."

Both The Gap and Rite Aid policies, as well as the owners' policy, contained provisions allowing the waiver of subrogation. The Gap policy provided that the insurer would have no right of subrogation against any person or entity against whom or which the insured, in writing, has waived subrogation rights. Rite Aid's policy provided that any release of liability entered into by the insured prior to loss would not affect the insured's right to recover thereunder.

The owners moved for summary judgment dismissing the complaint based on the waiver of subrogation clauses of the re-

spective leases. To the extent the complaint sought to recover for uninsured non-subrogated claims, such as loss for business interruption, the owners argued that under article 4 of the leases they were relieved of any liability for any injury to business.

In opposing the motion, The Gap claimed that the lease's waiver of subrogation provision did not bar recovery of the $1 million of its property loss that was uninsured because of its deductible. Rite Aid similarly claimed that it was entitled to recover $10,000 of its loss incurred in exhausting its deductible as well as its uninsured business interruption loss of $520,733.

Relying on the leases' waiver of subrogation provisions, the IAS court granted summary judgment dismissing the complaint even as to the amount of the policy deductibles. It also rejected plaintiffs' breach of contract argument, finding that the owners' covenant against violating the Building Code, as contained in The Gap lease, was expressly limited to the premises demised and did not extend to the premises leased to Sloan's. The court also rejected any uninsured business interruption claim asserted in the complaint as barred by article 4 of the leases. While there are significant differences in the respective leases' waiver of subrogation clauses, neither clause includes within its embrace the uninsured loss that is encompassed by an insurance policy deductible. Accordingly, those claims should be reinstated. In addition, we disagree with the IAS court's dismissal of the claims for business interruption loss.

In the waiver of subrogation clause in its lease, The Gap waived any claim against the owners for damage to its property "caused by any risk insured against." While The Gap did obtain insurance coverage for the specific risk in question, i.e., fire loss, it limited its coverage by its assumption of a $1 million deductible. As the courts have held, this uninsured segment of loss falls outside the ambit of "risk insured against" for purposes of inclusion in the waiver of subrogation clause. (*Federal Ins. Co. v Honeywell, Inc.*, 243 AD2d 605; *see, Kaf-Kaf, Inc. v Rodless Decorations*, 90 NY2d 654.) Absent coverage and payment of an insured loss, there is no right to subrogation and, thus, the waiver clause has no application.

Rite Aid's lease is even clearer on the waiver of subrogation issue. It provides that "each party shall look first to any insurance in its favor before making any claim against the other party * * * and to the extent that such insurance is in force and collectible and to the extent permitted by law, Landlord

and Tenant each hereby releases and waives all right of recovery against the other or any one claiming through or under each of them by way of subrogation or otherwise." Clearly, Rite Aid's $10,000 deductible does not fall within the category of insurance that is "in force and collectible" and is therefore outside the ambit of the waiver of subrogation clause.

While the procurement of first-party property insurance with a $1 million deductible might not be reflective of good business sense, it does not serve to undermine the efficacy of the waiver of subrogation clause since the leases did not require the tenant to obtain fire contents coverage in any specified amount or, at all, for that matter. If, as the owners argue, the parties clearly intended that neither the landlord nor tenant would be responsible for the other's fire or casualty losses, then the leases should have required the maintenance of insurance in specified amounts covering such risks.

While the parties to a commercial transaction are free to allocate the risk of liability to third parties through insurance and deployment of a waiver of subrogation clause (*Interested Underwriters at Lloyds v Ducor's, Inc.*, 103 AD2d 76, 77, *affd* 65 NY2d 647; *see, Board of Educ. v Valden Assocs.*, 46 NY2d 653), under the leases at issue the tenants were free to undertake the uninsured risk they did by assuming a substantial deductible. Having done so, there is no legal impediment to the tenants' seeking recourse for their uninsured loss from the landlord, assuming they can show liability therefor. Indeed, as article 8 of both The Gap and Rite Aid leases expressly recognizes, "Landlord or its agents shall not be liable for any damage to property of Tenant * * * unless caused by or due to the negligence of Landlord, its agents, servants or employees."

The IAS court also dismissed plaintiffs' business interruption loss claims, relying on article 4 of the subject leases, which provides that there shall be "no liability on the part of Landlord by reason of * * * injury to business arising from Landlord, Tenant or others making or failing to make any repairs, alterations, additions or improvements in or to any portion of the building or the demised premises or in and to the fixtures, appurtenances or equipment thereof." This provision undoubtedly was intended to limit the landlord's liability to exclude such economic injury, which might otherwise be recoverable as an item of consequential damage in the event of the landlord's breach of its covenant to repair. (*See, American List Corp. v U.S. News & World Report,* 75 NY2d 38; *Hadley v Baxendale,* 9 Exch 341, 156 Eng Rep 145 [1854]; 11 Williston, Contracts § 1356 [3d ed].)

Article 4, however, as noted, also states that the "provisions of this article 4 with respect to the making of repairs shall not apply in the case of fire or other casualty which are dealt with in article 9 hereof." Plaintiffs mistakenly argue that this language makes it clear that article 4's bar against the recovery of business interruption loss does not apply to such claims when they arise out of a fire.

Article 9 of the leases, to which article 4 refers, primarily sets forth the contractual obligations of the parties with respect to repairs and the payment of rent in the event the demised premises are damaged by fire or other casualty. It provides that if the premises are rendered partially unusable, rent is apportioned; if they are rendered totally unusable the obligation to pay rent ceases until the premises are restored. In either event, the landlord has the obligation to repair.

While article 4 makes it clear that its provisions "with respect to the making of repairs" do not apply in the case of fire or other casualty, this does not mean that the limitation contained in article 4 with respect to the landlord's liability for failure to make repairs, i.e., that there shall be "no liability on the part of Landlord by reason of * * * injury to business arising from Landlord * * * making or failing to make any repairs," does not apply in the case of fire or other casualty. (*See, Periphery Loungewear v Kantron Roofing Corp.*, 190 AD2d 457.)* In any event, plaintiffs, as noted, do not assert any claim based on the owners' breach of their obligation to repair the demised premises. Instead, they base their damage claim on a cause of action in negligence, which, as discussed, is unaffected by the waiver of subrogation clause and would include damages for business interruption loss, and on two causes of action for breach of contract.

The claims for breach of contract are based on certain lease provisions and alleged related Building Code violations and are asserted, in our view, to circumvent the waiver of subrogation clause, whose provisions apply, if at all, only to tort-based claims, not claims premised on contractual liability (*Viacom Intl. v Midtown Realty Co.*, 193 AD2d 45, 51-52; *St. Paul Fire & Mar. Ins. Co. v Protection Mut. Ins. Co.*, 644 F Supp 38). We find these claims to be meritless. The IAS court properly rejected plaintiffs' claim based on an alleged violation of a provision of The Gap lease, article 38, in which the landlord

---

* Contrary to plaintiffs' contention, the record on appeal in *Periphery* reveals that the lease in that case contains virtually identical language.

represented that, as of the date of delivery of possession, the demised premises would not be in violation of any applicable building code, on the ground that this provision did not extend to purported violations in other portions of the building and that there was no allegation of any violation with respect to The Gap's premises. Similarly, plaintiffs' claim that defendants breached their leases by permitting violations of Administrative Code of the City of New York §§ 27-366, 27-367 and 27-376 based on the lack of a sprinkler system is meritless. As the record reflects, no showing has been made of a violation of the cited sections.

Accordingly, the order of the Supreme Court, New York County (Emily Goodman, J.), entered April 21, 1999, granting the motion of the defendants Carmel, Korn and Williams Real Estate Co., Inc., for summary judgment dismissing the complaint, should be modified, on the law, to deny the motion as to the first cause of action and the complaint reinstated as to said cause of action with respect to said defendants and, except as thus modified, affirmed, without costs or disbursements.

NARDELLI, WILLIAMS, SAXE and FRIEDMAN, JJ., concur.

Order, Supreme Court, New York County, entered April 21, 1999, modified, on the law, to deny defendants-respondents' motion to dismiss as to the first cause of action, that cause of action reinstated and, except as thus modified, affirmed, without costs or disbursements.