[739 NYS2d 671]

THEATRE ROW PHASE II ASSOCIATES, Respondent, v NATIONAL RECORDING STUDIOS, INC., Appellant.

First Department, March 14, 2002

**APPEARANCES OF COUNSEL**

*David C. Burger* of counsel (*Robinson, Brog, Leinwand Greene, Genovese & Gluck, P.C.,* attorneys), for respondent.

*Thomas R. Newman* of counsel (*Luce, Forward, Hamilton & Scripps, LLP,* and *M. David Baker,* attorneys), for appellant.

**OPINION OF THE COURT**

SAXE, J.

Defendant National Recording Studios (National) leased premises on West 42nd Street in Times Square in 1979, in which it operates a video and audio complex and rents studio time, space and services to production companies and related entities. National's lease specifically prohibits subleases without the written consent of the landlord. Plaintiff Theatre Row Phase II Associates (TRA) assumed all rights as landlord under the lease as of 1980.

In September of 2000, one of National's clients, Monet Lane Productions (Monet), wrote to TRA regarding a personal injury action brought against Monet, asking TRA to defend and indemnify it. The letter enclosed a document which Monet described as the sublease between National and Monet.

Within two weeks of its receipt of Monet's letter referring to Monet's sublease, TRA sent National a notice to cure an alleged breach of the lease based upon illegal subletting. National responded that it had not sublet any of the premises and there was nothing to cure, that Monet was one of its many clients,

and that Monet had not used National's facilities in almost six months. TRA then instituted an action alleging that National entered into improper sublease agreements with Monet and one or more of the other entities listed on the building's directory, a list that included ESPN, A&E, Juvenile Diabetes, MTV, and Nickelodeon. TRA alleged causes of action for (1) breach of the lease, (2) unjust enrichment, and (3) attorney's fees.

National moved for summary judgment, arguing that the lease afforded it the right to license part or all of the premises to clients for audio and visual recording, and that the lease terms limited the bases for any potential recovery and precluded a claim of unjust enrichment. TRA contended that the terms of Monet's agreement with National established that it was a sublease in violation of National's lease with TRA, and sought full discovery of other agreements National had entered into with clients.

National's motion for summary judgment was denied in all respects by the IAS court. On appeal, we hold that while that court was correct in regard to the breach of contract cause of action, the second cause of action, for unjust enrichment, should have been dismissed. Nevertheless, although we grant to that extent the relief sought by National, we reject National's proposed rationale for the relief.

██ As the IAS court properly found, issues of fact exist concerning whether the purported licensing agreement entered into between National and one of its clients, without the consent of plaintiff landlord, TRA, violated the provision of the parties' lease agreement prohibiting unauthorized subletting. The terms of the nominal licensing agreement are in many respects similar to those of a sublease (*see, Miller v City of New York,* 15 NY2d 34, 37-38). Indeed, in view of the ambiguous nature of the agreement between National and its client, the motion court properly determined that extrinsic evidence might be received as an aid to the agreement's construction (*see, General Mills v Filmtel Intl. Corp.,* 195 AD2d 251, 253).

While, as the dissent points out, lease section 7.2 clarifies the point that the mere licensing of part or all of the premises to business clients for a period of time for recording purposes does not, in and of itself, constitute a sublease, that provision also explicitly recognizes the possibility that National would enter into a sublease, under which circumstances the lease requires the tenant to obtain the landlord's consent. What the dissent fails to confront is that the purported licensing agreement contains, as the landlord correctly contends, numerous

elements that go far beyond the scope of a standard licensing arrangement, and that are normally associated more with subleases than with licenses. Specifically, the client was granted the exclusive use, seven days per week, 24 hours per day, of extensive portions of the leased premises, including the entire first through third floors of 440 West 42nd Street, a television studio, and all green rooms and audience holding areas of 460 West 42nd Street, for a fixed term from March 9, 1998 through August 21, 1998, with 12 option periods extending to August 17, 2001, along with the right to make "substantial permanent improvements," and the assumption of "control and liability" even if the client assigned its right to use the premises to a third party.

Although the parties' lease gave the tenant the right to license the use of the leased premises to others, we cannot conclude as a matter of law that the agreement at issue here falls within that category as it was contemplated by the parties. "A document calling itself a 'license' is still a lease if it grants * * * the exclusive right to use and occupy that land" (*Miller v City of New York*, 15 NY2d 34, 38; *see*, *Tsabbar v Auld*, 276 AD2d 442).

However, summary judgment should have been granted as to TRA's second cause of action, since a claim for unjust enrichment may not be maintained where an express agreement exists defining the parties' rights and obligations (*see*, *Apfel v Prudential-Bache Sec.*, 81 NY2d 470, 479). Nevertheless, we deem it necessary to explain that we reject National's suggestion that TRA is legally precluded from seeking, as damages for the alleged breach of contract, the amount by which National was unjustly enriched, that is, damages representing the amount received by National as rent from the subtenant in excess of the rent payable to TRA by National.

We perceive no logical support for the absolute rule relied upon by National, that damages for breach of a covenant against unauthorized subletting may under no circumstances include any of the rental fees collected by the tenant from its subtenant. While this proposition is indeed stated as established law by certain legal authorities (*see*, 1 Dolan, Rasch's, Landlord and Tenant—Summary Proceedings § 9:98, at 444 [4th ed 1998]; 74A NY Jur 2d, Landlord and Tenant § 728), it is supported in those treatises only by one trial level decision (*see*, Rasch, *supra*, citing *Erwin v Farrington*, 132 NYS2d 20 [Sup Ct Steuben County 1954], *revd on other grounds* 285 App Div 1212). In contrast, when this Court has had occasion to

remark on available damages for breach of a covenant not to sublet, it has spoken less definitively:

> " 'The measure of damages for the breach of a covenant not to assign or sublet is, it seems, *generally speaking*, the amount of loss to which the landlord is subjected by the assignment * * * *Usually*, since the original lessee remains, even after assignment, liable on the express stipulations of the lease, an assignment or subletting by him in violation of the covenant will not support a claim for substantial damages' " (*Krasner v Transcontinental Equities*, 70 AD2d 312, 320 [Lupiano, J., concurring], quoting Tiffany, Landlord and Tenant § 152 [j] [4], at 942-943 [emphasis added]).

Not only is it unnecessary to impose, at this juncture, an absolute limitation on damages without reference to the circumstances, but in this particular instance it is especially inappropriate. That is because the terms of the lease tend to support TRA's right to claim entitlement to the excess rents collected by the tenant from its subtenant beyond the amount payable to the landlord. Specifically, the contract gives the landlord the option to sublease any space the tenant proposes to sublease. From this contractual option it is possible to infer that the parties intended to give the landlord the right to any expected profits that could be derived from a sublet of the leased premises at a rent in excess of that paid by the tenant. Since, if the alleged breach of contract is proved, TRA may seek any damages that were reasonably foreseeable or within the contemplation of the parties at the time the contract was formed (*see, American List Corp. v U.S. News & World Report*, 75 NY2d 38, 42-43; *Hadley v Baxendale*, 9 Exch 341, 156 Eng Rep 145; *The Gap v Red Apple Cos.*, 282 AD2d 119, 124; 11 Williston, Contracts § 1356 [3d ed]), the claimed damages may fall within the category of consequential damages for the breach of contract.

It is unnecessary and premature at this stage of the litigation to exclude the possibility that, if appropriate facts are shown, TRA may establish a right to damages amounting to any rents received by National in excess of that which it paid to TRA for the same space.

Accordingly, the order of the Supreme Court, New York County (Walter Tolub, J.), entered on or about March 27, 2001, which, to the extent appealed from, denied defendant's motion for summary judgment dismissing the complaint, should be

modified, on the law, to grant the motion to the extent of dismissing plaintiff's second cause of action, and otherwise affirmed, without costs.

LERNER, J. (dissenting in part). I would reverse and grant defendant's motion for summary judgment dismissing the complaint in toto.

It is undisputed that, in 1979, defendant tenant, National Recording Studios, a production, postproduction and studio facility, which is in the business of providing studios, equipment and sundry personnel (i.e., technical directors, camera operators, video engineers, etc.) to its clients, entered into a 25-year lease for the former West Side Airline Terminal building at 460 West 42nd Street. As noted by the motion court, section 7.2 of the lease governs subletting of the premises and provides, in pertinent part: "For purposes of this Section 7.2 subletting shall not be deemed to be the licensing by Tenant of part or all of its premises for periods of time to business clients for audio and visual recording purposes." The motion court also found "that the very nature of defendant's business required it to allow producers and production companies the exclusive use of the premises." Defendant admits that, over the years, it has executed many facility agreements, license agreements and the like with its clients.

Nevertheless, in denying defendant's motion, the motion court, relying upon *Tsabbar v Auld* (276 AD2d 442) and the general statement that some courts have held that granting a party the exclusive use of premises constitutes a sublease, found that "it is unclear from the lease exactly what the intent of the parties was, considering the fact that the defendant's business apparently required it to give control of the premises to clients." However, given the nature of defendant's business and the unambiguous terms of the parties' lease, which specifically contemplated defendant's licensing of its premises to production companies for periods of time, there is no basis in law or fact for the motion court's finding that the lease was ambiguous as to the intent of the parties.

Where the terms of the lease are clear and unambiguous, they are to be enforced in accordance with the expressed intention of the parties and the courts must take into consideration the practical business considerations involved in real estate transactions (*see, Wiener v Ga-Ro Die Cutting,* 104 AD2d 331, 333, *affd* 65 NY2d 732). Likewise, where the lease terms are negotiated by experienced attorneys and business persons,

there is also no basis for interpreting the agreement to mean something other than what the parties agreed to (*cf.*, *425 Fifth Ave. Realty Assoc. v Yeshiva Univ.*, 228 AD2d 178).

WALLACH and FRIEDMAN, JJ., concur with SAXE, J.; ANDRIAS, J.P., and LERNER, J., dissent in part in a separate opinion by LERNER, J.

Order, Supreme Court, New York County, entered on or about March 27, 2001, modified, on the law, to grant the motion for summary judgment to the extent of dismissing plaintiff's second cause of action, and otherwise affirmed, without costs.