## THE STOP AND SHOP SUPERMARKET COMPANY *v.* ABCO REFRIGERATION SUPPLY CORPORATION ET AL.

Superior Court, Complex Litigation Docket at Waterbury
File No. X01 CV-00 0163760S

Memorandum filed November 12, 2003

---

*Carmody & Torrance*, for the plaintiff.

*Conway & Stoughton*, for the defendants.

*Coyne, Von Kuhn, Brady & Fries*, for the defendant F.D.R., Inc., et al.

SHEEDY, J. The present action arises out of a fire that occurred on November 18, 1998, in Norwalk during the construction of a superstore owned by the plaintiff, The Stop & Shop Company (Stop & Shop). Among the defendants being sued are a refrigeration company, F.D.R., Inc. (F.D.R.), and its president David P. Smith. On the date in question, an F.D.R. employee was using an acetylene gas cylinder on the property when that cylinder either fell or was knocked over and its stem and valve assembly was sheared off, permitting gas to escape under pressure and ignite. The fire is alleged to have caused extensive property damage and an interruption of Stop & Shop's business with resulting financial losses. The case is being pursued along two lines of recovery. First, as a subrogation action on behalf of Stop & Shop's property insurer, Factory Mutual Insurance Company (Factory Mutual), successor in interest to Arkwright Mutual Insurance Company, for the $6,382,682 paid to Stop & Shop by Factory Mutual; second, as a direct action for recovery of the amount of Stop & Shop's deductible: $250,000.[1]

As part of the project, Stop & Shop and F.D.R. entered into a contract dated July 29, 1998, whereby, for the sum of $149,900, F.D.R. agreed to install mechanical refrigeration for the new store. The contract was an

---

[1] These amounts are claimed by Stop & Shop in its memorandum of law in opposition and in response to a certain interrogatory pertaining to the defendants' request for disclosure. That would, however, appear inconsistent with Stop & Shop's response to an earlier interrogatory, which indicates the limit of liability under the applicable policy was $6,495,500 subject to a $250,000 deductible.

American Institute of Architects contract, AIA document A107, 1987 edition, entitled: "Abbreviated Form of Agreement Between Owner [Stop & Shop] and Contractor [F.D.R.]." Under that contract, the "project" is Stop & Shop Store number 640 in Norwalk, and the "[w]ork" to be executed by F.D.R. is "[m]echanical refrigeration installation for a new store." Smith executed the agreement as president of F.D.R.

Stop & Shop's second revised complaint asserts four causes of action against F.D.R. The first count is negligence, the second is breach of contract, the third is contractual indemnification and the fourth and final count is gross negligence. F.D.R. has moved for summary judgment on all counts, claiming there is no genuine issue of material fact and it is thus entitled to judgment as a matter of law. Stop & Shop has objected, and oral argument was heard on October 17, 2003.

F.D.R. makes the following three claims. First, under the contract, Stop & Shop has waived all rights as against it. Second, F.D.R. and Smith are protected and intended additional insureds under Stop & Shop's property insurance policy. Third, and finally, Smith cannot be held personally liable. Stop & Shop opposes the first two claims but, for reasons unnecessary to address here, does not oppose the third. The motion for summary judgment as to Smith is, therefore, granted.

Summary judgment shall be rendered "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) *Miller* v. *United Technologies Corp.*, 233 Conn. 732, 745, 660 A.2d 810 (1995). The party seeking summary judgment "has

the burden of showing the absence of any genuine issue as to all the material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law." (Internal quotation marks omitted.) *D.H.R. Construction Co.* v. *Donnelly*, 180 Conn. 430, 434, 429 A.2d 908 (1980). "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 209, 757 A.2d 1059 (2000). "A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001). "It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue." (Internal quotation marks omitted.) *Maffucci* v. *Royal Park Ltd. Partnership*, 243 Conn. 552, 554–55, 707 A.2d 15 (1998).

Contract interpretation involves determining the intent of the parties by "construing the whole contract and all relevant provisions together." (Internal quotation marks omitted.) *Colby* v. *Burnham*, 31 Conn. App. 707, 714, 627 A.2d 457 (1993). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 498, 746 A.2d 1277 (2000). "[E]very provision must be given effect if it is possible to do so." (Internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 671, 791 A.2d 546 (2002). "[P]arties ordinarily do not insert meaningless provisions in their agreements." *Connecticut Co.* v. *Division 425*, 147 Conn. 608, 617, 164 A.2d 413 (1960). "If the language of the contract is susceptible to more than one reasonable interpretation, the contract is

ambiguous." *United Illuminating Co.* v. *Wisvest-Connecticut, LLC,* supra, 671. Interpretation, then, is a question of fact to be determined by the fact finder.

The defendants rely primarily on article seventeen of the contract—specifically, articles 17.3 and 17.6—in concluding that the parties intended to allocate the risk of this loss to Stop & Shop. Article 17.3 provides in pertinent part: "Unless otherwise provided, the Owner shall purchase and maintain . . . property insurance upon the entire Work at the site to the full insurable value thereof. This insurance shall be on an all-risk policy form and shall include interests of the Owner, the Contractor, Subcontractors and Sub-subcontractors in the Work and shall insure against the perils of fire . . . ."

Article 17.6 provides in pertinent part: "The Owner and Contractor waive all rights against each other . . . for damages caused by fire or other perils to the extent covered by property insurance pursuant to this Article 17 or any other property insurance applicable to the Work . . . ." The defendants assert that these two provisions establish that the onus was on Stop & Shop to purchase and maintain property insurance for losses such as this fire and that it waived the right to seek any damages against them. They buttress their argument by citing a number of cases which have interpreted the same or similar language in construction cases governed by AIA contracts. In each of those cases, the court found that the subject language constituted a waiver of claims for damage occurring during a construction project to the extent that loss was covered by an insurance policy either purchased pursuant to the contract or which policy preexisted the loss. See, e.g., *Tokio Marine & Fire Ins. Co.* v. *Employers Ins. of Wausau,* 786 F.2d 101 (2d Cir. 1986); *Industrial Risk Insurers* v. *Garlock Equipment Co.,* 576 So. 2d 656 (Ala. 1991); *United States Fidelity & Guaranty Co.* v. *Farrar's Plumbing & Heating Co.,* 158 Ariz. 354, 762

P.2d 641 (1988); *Willis Realty Associates* v. *Cimino Construction Co.*, 623 A.2d 1287 (Me. 1993); *Haemonetics Corp.* v. *Brophy & Phillips Co.*, 23 Mass. App. 254, 501 N.E.2d 524 (1986); *Employers Mutual Casualty Co.* v. *A.C.C.T., Inc.*, 580 N.W.2d 490 (Minn. 1998); *Trump-Equitable Fifth Avenue Co.* v. *H.R.H. Construction Corp.*, 106 App. Div. 2d 242, 485 N.Y.S.2d 65, aff'd, 66 N.Y.2d 779, 488 N.E.2d 115, 497 N.Y.S.2d 369 (1985).

Stop & Shop argues that this conclusion ignores other textual provisions of the contract, which, when read as a whole, support the conclusion that it retained the right to seek damages against F.D.R. to the extent its negligence caused harm to the "project" and that F.D.R. agreed to purchase liability insurance for this exposure. Stop & Shop's position is that all it relinquished was the right to seek damages against F.D.R. to the extent of any property insurance applicable to F.D.R.'s own "[w]ork . . . ." Specifically, article 17.1 obligated F.D.R. to procure liability insurance for damage to the "project"[2] and article 17.3 required Stop & Shop to purchase property insurance "upon the entire Work at the site to the full insurable value thereof." Article 9.7 provides: "The Contractor shall be responsible to the Owner for the acts and omissions of the Contractor's employees, sub-contractors and their agents and employees and other persons performing portions of the Work under a contract with the Contractor." Article 9.12 provides in pertinent part that the "Contractor shall indemnify and hold harmless the Owner . . . from and against claims, damages, losses and expenses . . . arising out of or resulting from performance of the Work, provided that such claim . . . is attributable to . . . injury to or destruction of tangible property [other than the Work itself] . . . ."

---

[2] Article 17.1 provides in pertinent part: "The Contractor shall purchase . . . insurance for protection . . . from claims for damages, other than to the Work itself . . . ."

The problem created by Stop & Shop's argument is that the distinction between "[w]ork" and "project" (or "work" and "nonwork" as it is often referred to by the courts) is abandoned in the waiver provision of article 17.6. That provision reads simply: "The Owner and Contractor waive *all* rights against each other." (Emphasis added.) "There cannot be any broader classification than the word all." (Internal quotation marks omitted.) *Burkle* v. *Car & Truck Leasing Co.*, 1 Conn. App. 54, 56, 467 A.2d 1255 (1983). By the contract's express terms, Stop & Shop waives its right to look to F.D.R. as F.D.R. waives its right to sue Stop & Shop for damages "to the extent covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work." That the drafters of the Agreement were as faithful to the "[w]ork"-"project" dichotomy with regard to the parties' respective insurance obligations imposed by the same article seventeen but were silent as to that distinction in article 17.6 cannot be mere oversight and must be deemed meaningful. That is especially true where, as here, the contract is between sophisticated parties and the agreement is commercial in nature. An explicit clause to protect the insurer's right of subrogation at all times could have been included in the policy, but was not. Indeed, article 17.6 is so broad as to require both *Stop & Shop* and F.D.R. not only to waive all rights as against each other but also as against "the Architect, Architect's consultants, separate contractors described in Article 12, if any, and any of their subcontractors, sub-subcontractors, agents and employees . . . ." It further provides that both *Stop & Shop* and F.D.R. "shall require similar waivers" in favor of the other with regard to other workers participating in the construction—whether they provide professional services (as in the case of "architects" and "consultants") or skilled or unskilled labor (as in the case of "subcontractors,"

"sub-subcontractors," "agents and employees"). The intent was clearly to create a universal waiver and the unambiguous expression of that intent is realized only by giving effect to the plain meaning of the words chosen by the parties.

The majority of jurisdictions have interpreted this clause as a bar, finding that the purpose of this waiver of subrogation provision was, in conjunction with the other contractual provisions, to allocate risks and costs among the parties to the contract. This construction promotes certainty as to the liability of the parties to these standard contracts, reduces litigation, avoids work interruptions and protects the contracting parties from loss by bringing all property damage claims under the owner's all risk builder's policy. Of interest is that, in enumerating the reasons for interpreting this waiver clause as barring the owner from seeking all damages as to which it has obtained insurance under the contract, the most often cited source is the *dissent* in *S.S.D.W. Co.* v. *Brisk Waterproofing Co.*, 76 N.Y.2d 228, 556 N.E.2d 1097, 557 N.Y.S.2d 290 (1990). There, the Court of Appeals of New York held that the owner's waiver of rights against the contractor for damages caused by fire did not bar the insurer's subrogation claim for damages caused by the contractor in building areas outside the limits of the "Work."[3] Construing contractual provisions identical to those before this court, Alexander, J., writing for the dissent, noted article 17.3 required the owner to provide "all-risk" coverage upon " 'the entire Work at the site to the full insurable value thereof' "; id., 237 (Alexander, J., dissenting); which coverage " 'includes', but is not limited to, the respective parties' interests in the 'Work.' " Id., 238 (Alexander, J., dissenting). In effect, this provision required the owner "to insure against damage to the building and to waive all claims against the contractor for losses

---

[3] Four judges took the majority view, two judges dissented and one judge did not participate.

covered by that insurance." Id., 239 (Alexander, J., dissenting). Quoting the Florida Appellate Court in *Housing Investment Corp.* v. *Carris*, 389 So. 2d 689 (Fla. App. 1980), he said: " 'The owner had, as all owners always have, the right to insure his own property for his own exclusive benefit without the consent or agreement of the contractor or anyone else. Therefore, the only reasonably conceivable purpose of a construction contract provision placing an obligation on the owner to carry insurance is to benefit the contractor by providing him protection and exculpation from risk of liability for the insured loss. Although the contractor was not named as an insured, nor does the contract require this to be done, the contract insurance provision is valuable to the contractor for the very purpose this case exemplifies and serves to limit the owner to insurance proceeds even though the loss was caused by the negligence of the contractor.' Given this allocation of risk agreed upon by the parties, the fact that that insurance coverage is not limited to the actual work performed under the contract is irrelevant." (Citation omitted.) *S.S.D.W. Co.* v. *Brisk Waterproofing Co.*, supra, 239–40 (Alexander, J., dissenting).

This court finds that dissent faithful to the contract language and, thus, to the intent of the parties. This construction also avoids needless trials in a search to determine the extent to which the damages suffered were related to the "Work."

To be sure, there is the potential for tension between the language of article 17.3 requiring Stop & Shop to purchase property insurance upon the "entire Work at the site" and the language of article 17.6 requiring the parties to waive all rights against each other for damages "covered by property insurance obtained pursuant to this Article 17 or any other property insurance applicable to the Work . . . ." While that prescription is not a model of the clear drafter's art, the two provisions need not be inconsistent—and are not here. Stop &

Shop's responses to interrogatories make clear that it had an all-risk policy which covered the property and that the insurer had reimbursed it $6,382,682 for the claimed losses. Clearly, that policy was *either* purchased pursuant to the requirements of article seventeen *or* constitutes "other property insurance applicable to the Work." It also satisfied Stop & Shop's obligation to insure the "entire Work at the site." Thus, the other property insurance "applicable to the Work" is included in the insurance Stop & Shop purchased upon the "entire Work at the site." As required by article 17.6, the all risk policy which paid the loss insured the entirety of the work at the site; it included but was not limited to the "Work."

In a case more recent than *S.S.D.W. Co.*, the Court of Appeals of Texas, construing the exact waiver clause language as in the present case before this court, took the majority view in concluding that, because the damages suffered by the insured were covered by the policy, that policy constituted " 'other property insurance applicable to the Work' " (as used in article 17.6) and, thus, the waiver clause was enforceable against the insurer. *Trinity Universal Ins. Co.* v. *Bill Cox Construction, Inc.*, 75 S.W.3d 6, 15 (Tex. App. 2001). It held that waived claims "are not defined by what property is harmed (i.e., 'any injury to the Work'); but rather, are limited by the source of any insurance proceeds paying for the loss (i.e., whether the loss was paid by a policy 'applicable to the Work')." Id., 13. The court then affirmed the trial court's granting of the contractors' motion for summary judgment. Id., 15. Accord *Walker Engineering* v. *Bracebridge Corp.*, 102 S.W.3d 837 (Tex. App. 2003).

This court rejects, however, the defendants' argument that F.D.R. is an additional insured under the contract—nor does the contract obligate Stop & Shop to designate F.D.R. or Smith as such. Absent any express agreement between the parties, the court will not attach

meaning to silence by reading into the contract what could have been expressed but was not. When Stop & Shop wanted to designate others as additional insureds, it did so. Further, given the contract language that addresses what each party was obligated to insure, the need to address the issue of economic waste (allegedly occasioned by both parties having to purchase insurance) would appear obviated.

Stop & Shop's deductible amount was not covered by the policy in question. To the extent that F.D.R.'s negligence proximately caused the unreimbursed damages, F.D.R. is liable to Stop & Shop for that amount.

Summary judgment shall enter on behalf of Smith and on behalf of Stop & Shop to the extent of its unreimbursed deductible amount.[4]