A09A1857. HANCOCK FABRICS, INC. v. ALTERMAN REAL ESTATE I, INC. et al.
(692 SE2d 20)

PHIPPS, Judge.

Hancock Fabrics, Inc. sued Alterman Real Estate I, Inc., Alterman Real Estate, Ltd., and Market Square Associates, L.P. (collectively, Alterman) for property damage and business losses allegedly resulting from two instances of water leaks in the roof of the retail space Hancock leased from Alterman. Alterman filed a motion for summary judgment and Hancock filed a motion for partial summary judgment, both of which the trial court initially denied. On reconsideration, the court granted Alterman's motion. Hancock appeals

the latter order, claiming that the trial court erroneously construed certain lease provisions. We agree and therefore reverse the grant of Alterman's motion for summary judgment.

> On appeal from the grant of summary judgment [an appellate] [c]ourt conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

The lease at issue required the landlord, at its expense, to maintain

> the roof, including its supporting members, the foundations and the outside walls and all other outside portions of the building of which the demised premises are a part . . . in good condition and repair throughout the term of [the] lease, [and] do anything necessary to protect the interior against rain or weather. . . .

The lease also obligated the landlord to make and pay for "all such necessary repairs" upon receiving written notice of the necessity thereof from the tenant. Hancock alleged that Alterman breached this duty to maintain and repair the roof, resulting in substantial property damage and subsequent business loss in two different years.

In its motion for summary judgment, Alterman argued that the lease's waiver of subrogation clause precluded Hancock from recovering damages from Alterman because it required Hancock to look solely to its own insurance for any property damage claim. That clause pertinently provided that each party to the lease

> mutually releases the other from liability, and waives all right of recovery against the other, for any loss of or damage to the property of each . . . , including earnings derived therefrom, caused by or resulting from . . . perils insured against under any insurance policies maintained by the parties hereto, regardless of the cause of such loss or damage even though it results from some act or negligence of a party hereto, its agents or representatives; provided, however, that this provision shall be inapplicable if it would

---

[1] *Merlino v. City of Atlanta*, 283 Ga. 186 (657 SE2d 859) (2008) (citations omitted).

have the effect, but only to the extent that it would have the effect, of invalidating any insurance coverage of the parties hereto.

Hancock admittedly had obtained property insurance, although the lease did not require it to do so.[2] The property insurance was subject to an annual aggregate deductible of $750,000 and a $25,000 deductible for each individual property loss. Hancock did not meet the annual aggregate deductible in the years for which it sought damages from Alterman, and it had received no insurance payments for any losses described in its complaint against Alterman. Hancock claimed that because insurance did not cover the property losses at issue, the waiver of subrogation clause was inapplicable.

The trial court denied Hancock's motion for partial summary judgment, concluding that the insurance procured by Hancock covered the perils at issue and that the waiver of subrogation clause applied even though no insurance proceeds had been paid on the losses at issue in this case. The trial court initially denied Alterman's motion for summary judgment because it did not address the express condition within the waiver of subrogation clause — "provided, however, that this provision shall be inapplicable if it would have the effect, but only to the extent that it would have the effect, of invalidating any insurance coverage of the parties hereto." In response to Alterman's motion for reconsideration, Hancock admitted that a "valid subrogation waiver by itself would not invalidate any policy of insurance relevant to this case." In light of that concession, the court granted Alterman's motion.

1. Hancock claims that the trial court erred in construing the lease's waiver of subrogation clause. The pertinent issue is whether Hancock's property insurance deductible falls within the "perils insured against" for purposes of the lease's waiver of subrogation clause.

The underlying facts are essentially undisputed and resolution of this issue depends on the correct interpretation of the lease. "The construction of a [lease] is a matter for the courts."[3] And we review the lease as a whole, as the rules of contract interpretation require.[4]

Waiver of subrogation clauses in leases are enforceable even in

---

[2] The lease did require both tenant and landlord to maintain insurance, at their own expense, to cover liability for injury, death or property damage to third parties, and specified the required policy limits for each liability category.

[3] *Oil-Dri Corp. of Ga. v. Thompson*, 297 Ga. App. 463, 464 (677 SE2d 325) (2009) (citation and punctuation omitted).

[4] *May Dept. Store v. Center Developers*, 266 Ga. 806, 810 (2) (471 SE2d 194) (1996), citing OCGA § 13-2-2 (4).

the absence of a requirement that either party purchase insurance.[5] In *Colonial Properties Realty v. Lowder Constr. Co.*,[6] a construction contract required the owner to maintain property insurance during the project and contained a clause whereby the owner and contractor waived all rights against each other for damages caused by fire or other perils to the extent covered by property insurance, but it did not require the owner to maintain property insurance after completion of the project.[7] To the extent the owner obtained insurance for that purpose, he waived all subrogation rights for damages attributable to fire or other perils covered by the separate insurance.[8]

Here, although the lease did not require it, Hancock obtained property insurance. But Hancock did not receive any payment from the insurance company for its property losses because it did not meet the policy's deductible. "Subrogation requires the existence of a contract to pay (insurance) and the actual payment of the claim; in the absence of insurance and payment thereunder, there can be no subrogation and hence no waiver."[9] In *E. C. Long, Inc. v. Brennan's of Atlanta*,[10] a contract between an owner and a contractor contained a clause whereby the parties waived "all rights against each other for damages caused by fire or other peril to the extent covered by insurance."[11] That clause was interpreted to require "a waiver against the other party to the extent the injured party was reimbursed by insurance."[12] Hancock was not reimbursed by insurance and therefore should not be subject to the waiver of subrogation clause.

Because Georgia appellate courts have not applied this principle to the circumstances presented here, we consider decisions from other jurisdictions.[13] In *The Gap, Inc. v. Red Apple Cos.*,[14] the court considered a lease that contained a waiver of subrogation clause providing that the parties waived all claims against the other party for any loss or damage to the building or improvements "caused by any risk insured against under any insurance policies carried by

---

[5] *May Dept. Store*, supra at 806-809 (1) (471 SE2d 194) (1996).

[6] 256 Ga. App. 106 (567 SE2d 389) (2002).

[7] Id. at 107.

[8] Id. at 108-109 (2).

[9] *May Dept. Store*, supra at 808-809; see also *Rabun & Assoc. Constr. v. Berry*, 276 Ga. App. 485, 489 (2), n. 3 (623 SE2d 691) (2005) (subrogation does not occur until payment is made because the right to subrogation must be supported by consideration, i.e., payment).

[10] 148 Ga. App. 796 (252 SE2d 642) (1979).

[11] Id. at 801 (1) (b).

[12] Id. at 802.

[13] See generally *Colonial Properties Realty*, supra at 109.

[14] 282 AD2d 119 (725 NYS2d 312) (2001).

either party."[15] The lease did not require the tenant to obtain its own fire insurance,[16] but The Gap obtained such insurance, with a $1 million deductible.[17] After a fire damaged the leased premises, The Gap sought to recover from the building owners its insured losses, including the deductible amount.[18] The court held that the deductible was an "uninsured segment of loss" for purposes of inclusion in the waiver of subrogation clause.[19] "Absent coverage and payment of an insured loss, there is no right to subrogation and, thus, the waiver clause has no application."[20]

*The Gap* court reasoned that

> [w]hile the procurement of first-party property insurance with a $1 million deductible might not be reflective of good business sense, it does not serve to undermine the efficacy of the waiver of subrogation clause since the leases did not require the tenant to obtain fire contents coverage in any specified amount or, at all, for that matter. If, as the owners argue, the parties clearly intended that neither the landlord nor tenant would be responsible for the other's fire or casualty losses, then the leases should have required the maintenance of insurance in specified amounts covering such risks.[21]

Here, Alterman could have contracted with Hancock to maintain property insurance on the leased premises in specified amounts as it did with liability for injury, death or property damage to third parties. Under the terms of the lease, however, Hancock was "free to undertake the uninsured risk [it] did by assuming a substantial

---

[15] Id. at 121.

[16] Id. at 122.

[17] Id. at 120.

[18] Id. at 120-121.

[19] *The Gap*, supra at 123; see also *Stop and Shop Supermarket Co. v. ABCO Refrigeration Supply Corp.*, 842 A2d 1194, 1200 (48 Conn. Supp. 301) (2003) (court considered waiver of subrogation clause whereby the owner and contractor waived all rights against each other for damages caused by fire or other perils to the extent covered by property insurance and held that the owner, who had procured insurance for the losses at issue, could recover its deductible from the contractor because the deductible amount was not covered by the policy).

[20] Id.; see also *Reade v. Reva Holding Corp.*, 30 AD3d 229, 232-233 (818 NYS2d 9) (2006) (waiver of subrogation clause does not bar one party from suing the other to recover for a loss to the extent such loss is not required to be covered by the parties' agreement and in fact is not covered by insurance because it falls within the deductible under the policy); *Fed. Ins. Co. v. Honeywell, Inc.*, 243 AD2d 605 (663 NYS2d 247) (1997) (waiver of subrogation clause that discharges defendant from all hazards covered by plaintiff's insurance does not bar plaintiff from seeking return of deductible not covered by insurance policy).

[21] *The Gap*, supra at 124.

deductible."[22] Having done so, there is no legal impediment to Hancock seeking to recover from Alterman its uninsured loss, which includes the deductible.[23] Thus, the trial court erred in granting Alterman's motion for summary judgment.

2. Alterman contends that even if Hancock's claims are not precluded by the waiver of subrogation clause, they are precluded by another clause, which required Hancock, in the event of damage to the leased premises, to "replace and repair so much of [its] trade fixtures and equipment in such demised premises which may be damaged or destroyed by fire or any other cause whatsoever." Hancock's claims in this case, however, include a claim for business losses, and deposition testimony from Hancock's representative showed that the damages sought were not limited to fixtures and equipment. Thus, summary judgment was not authorized under the cited lease provision.

*Judgment reversed. Smith, P. J., and Bernes, J., concur.*

DECIDED MARCH 2, 2010 — 

*Sommers, Scrudder & Bass, Henry E. Scrudder, Jr.,* for appellant.

*Gray, Rust, St. Amand, Moffett & Brieske, Michael J. Rust, Korey M. Carter, Nathan E. Minear,* for appellees.

---

[22] Id.

[23] See id.; *Stop & Shop Supermarket Co.,* supra.