## A04A1913. DUDE, INC. v. FOAMEX, L.P.
### (605 SE2d 459)

ELDRIDGE, Judge.

A special master found that defendant Foamex, L.P. was contractually obligated to Dude, Inc. ("Dude") to remove certain storage tanks pursuant to the terms of the parties' lease agreement wherein, upon termination of the lease, Foamex was to remove all of its equipment when vacating Dude's Newnan property. As a consequence, Foamex was ordered to pay Dude a total of $81,198.11 in damages and fees. However, while finding for Dude on the breach of contract claim, the special master also concluded that Foamex was not in "default" on the lease agreement so as to permit Dude to assert a cross-default which would have allowed Dude to terminate 12 additional lease agreements that it holds with Foamex. The superior court adopted the special master's findings and recommendations, making them the judgment of the court. Dude appeals, asserting error in the determination that Foamex was not in default and thereby precluding Dude's exercise of the cross-default lease provisions. Because there is evidence to support the conclusion that no

default occurred in this case and, thus, exercise of cross-default was unwarranted, we affirm.

On appeal, Dude's sole claim of error is that the special master's finding that Foamex failed to remove its equipment as required by the express terms of the lease is per se a finding that Foamex "defaulted" under the lease, and therefore, the special master's conclusion that Foamex was not in default is error as a matter of law. We disagree.

Under the terms of the lease at issue, a "Non-Monetary Default" is defined as an instance in which:

> Tenant fails to comply with any term, provision or covenant of this Lease *and* such failure continues for ninety (90) days after written notice thereof by Landlord to Tenant . . . *provided* that if the Non-Monetary Default cannot reasonably be cured within such ninety (90) day period, the Non-Monetary Default shall not be deemed to have occurred so long as Tenant commences curing such default within such ninety (90) day period, diligently pursues such cure thereafter, and actually cures such default with one hundred and eighty (180) days after the occurrence thereof.

(Emphasis supplied.) Accordingly, and contrary to Dude's contentions, a "default" is not synonymous with a "breach" of contract terms. Under the lease terms, a default includes the additional elements of notice and timely attempts to cure. Further, in order to exercise the cross-default provision of the lease when a Non-Monetary Default has occurred, the lease provides for a "Second Cure Period," and,

> the term "Second Cure Period" shall mean an additional period of fifteen (15) days to cure a Non-Monetary Default . . . which additional cure period shall not commence unless and until Landlord gives written notice to Tenant of the commencement of such [second] cure period after the expiration of the cure period for Non-Monetary Defaults.

So, in order to exercise a cross-default, an additional notice and cure period are contemplated.

From the findings and recommendations adopted by the superior court, it appears clear that conflicting evidence with regard to Dude's proper exercise of the lease's notice and cure provisions propelled the conclusion that the evidence did not warrant a finding that Foamex was in default under the terms of the lease. In that regard, this Court will uphold a court's factual conclusions if there is any evidence to

support them.[1]

Here, the record shows that, initially, neither party was entirely sure who owned the storage tanks so as to accomplish their removal. The record contains an exchange of letters indicating that, initially, Dude intended to remove the tanks. When it was determined that Foamex would remove the tanks, a general agreement between the parties was reached as to the implementation of such removal. Following subsequent discussions, however, a final agreement was never executed. It appears from the record that Foamex acted in good faith during these negotiations, agreeing at all times to remove and/or pay for the removal of the tanks. It also appears that even while the general agreement was being negotiated between Foamex and certain Dude representatives, other Dude representatives were claiming default and demanding removal of the tanks. Dude relies upon these demand letters as proof demonstrating timely notice and the start of the cure period. However, in light of Dude and Foamex's attempts to come to an agreement seemingly simultaneously with the execution of the demand letters, Dude's proof demonstrates only Foamex's justified confusion and the correctness of the superior court's conclusion that the evidence, while showing a breach in the contract terms, does not definitively show that notice and time to cure were properly given so as to demand a finding that Foamex was in default under the terms of the lease. Accordingly, with supporting evidence of record, we do not find clear error in the superior court's judgment.[2]

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED OCTOBER 6, 2004.

*Glover & Davis, J. Littleton Glover, Jr., Peter A. Durham*, for appellant.

*Cozen & O'Connor, Allan Levin*, for appellee.

---

[1] OCGA § 9-11-52; *Ins. Indus. Consultants v. Essex Investments*, 249 Ga. App. 837, 839 (1) (549 SE2d 788) (2001).

[2] *Ins. Indus. Consultants*, supra at 839.