A08A1132. WILKIE et al. v. 36747, LLC et al.
A08A1288. LOEB CONSULTING SERVICES, INC.
v. WILKIE et al.

(669 SE2d 155)

BARNES, Chief Judge.

This is a contract interpretation case, the issue being whether the buyer of a software company's assets assumed liability for a contractual obligation between the seller and the company's former salesperson. The salesperson sued both buyer and seller, who cross-claimed against each other. The trial court granted summary judgment to the buyer against both the salesperson and the seller, and denied the salesperson's motion for partial summary judgment against the buyer and seller.[1] In Case No. A08A1132, the seller appeals the grant of summary judgment, and in Case No. A08A1288, the salesperson appeals the denial of his motion for partial summary judgment as to liability. For the reasons that follow, we affirm the grant of summary judgment to the buyer against the salesperson and the seller, and reverse the denial of summary judgment to the salesperson against the seller.

The parties in this case include three individuals and four companies, two of which have similar names. This chart shows the parties' relationships:

| | |
|---|---|
| Ken Loeb (salesperson) | Loeb Consulting Services |
| Tony Wilkie (Seller) | Media Marketing, Inc., f/k/a Doris, Inc. and Fileserveronline, Inc. |
| Bob Eustace (Buyer) | 36747, LLC and Doris Insurance Systems, Inc. |

For simplicity, we will continue to refer to Wilkie, Media Marketing, Inc., and Fileserveronline, Inc. as "Seller," to Eustace, 36747, and Doris Insurance Systems as "Buyer," and to Loeb as "salesperson."

When this transaction began, the Buyer and Seller drew up a one-page agreement, literally on a napkin, that read:

I agree to sell 100% of the assets of Doris, Inc. and

---

[1] The buyer subsequently dismissed its cross-claim against the seller.

Fileserveronline Inc. to Robert R. Eustace for the price of $4,800,000, $500,000 as non-refundable deposit. The remainder of $4,300,000 payable at closing on or before 10-2-02. Tony Wilke [sic], President — Doris, Chm. [sic] & CEO — Fileserveronline.

The Buyer subsequently transferred $500,000 to the Seller's account, but disagreements arose when the parties began drafting closing documents. The Buyer sued the Seller in district court for breach of contract and fraud, seeking either to complete the deal or recoup the $500,000.

The Buyer and Seller privately mediated and reached an agreement documented by a 12-page Asset Purchase Agreement (APA) with at least 11 attached documents, including, for example, schedules of assumed and excluded assets and liabilities. The Buyer dismissed the district court case, the sale closed, and in January 2003 the Buyer began operating the business under the name of Doris Insurance Systems, LLC. After selling its assets, Doris, Inc., continued its corporate existence but changed its name to Media Marketing, Inc.

The business leases its software to small, independent insurance agencies, who pay monthly fees for its use. In March 2003, the Buyer discovered that payments were being made monthly to the salesperson's company, Loeb Consulting, Inc., through an accounting system that automatically tallied the salesperson's commissions based on his customers' renewals. The Buyer terminated the payments, informing the salesperson by letter that the Seller had not identified the salesperson's contract in the sales agreement and the new business had not assumed liability for these payments.

The salesperson sued the Seller and the Buyer for breach of contract, quantum meruit, fraudulent conveyance, "disregard of corporate formalities," bad faith, misappropriation, and conversion. Both the Buyer and the Seller denied liability, and cross-claimed against each other for indemnity.

Following discovery, the Buyer moved for summary judgment against the salesperson and against the Seller's cross-claim, alleging that under the APA the Buyer did not assume the liability for the contract. The Seller moved for partial summary judgment, responding that the Buyer knew about the salesperson's contract, which was either a franchise agreement or a "bona fide trade payable" for which the Buyer assumed liability. Finally, the salesperson moved for summary judgment as to liability against the Seller if the court granted relief to the Buyer. Without explanation, the trial court denied summary judgment to the Seller, denied the salesperson's motion for summary judgment, and granted summary judgment to

the Buyer against both the Seller and the salesperson. Upon request the trial court entered a final appealable judgment.

In Case No. A08A1132, the Seller contends that the trial court erred in granting summary judgment to the Buyer because factual disputes existed over whether the Buyer assumed liability for the salesperson's contract and whether the Buyer must indemnify it against the salesperson's claims. In Case No. A08A1288, the salesperson appeals to "avoid the potential of inconsistent decisions" that could leave him unable to proceed against either the Buyer or the Seller.

On appeal we review the trial court's grant or denial of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006). Further, contract disputes are particularly well-suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court. *Burns v. Reves*, 217 Ga. App. 316, 318 (457 SE2d 178) (1995).

1. In this State, contract construction involves three steps. First, is the language ambiguous? If not, the court enforces the contract. If so, the court next applies the rules of contract construction to resolve the ambiguity. If the ambiguity cannot be resolved, in the last step, a jury must decide what the parties intended and what the ambiguous language means. *Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371) (1999).

### Case No. A08A1132

2. The Seller argues that the trial court erred in granting summary judgment to the Buyer. Despite a sales agreement totaling almost 50 pages, the salesperson's contract is not specifically listed anywhere. The APA provides that the Buyer will pay $5.2 million and assume certain liabilities in exchange for the company's goodwill and certain assets. The contract described included and excluded assets and liabilities, and explicitly provided that the Buyer did not assume any obligation of the Seller not specifically listed in the Assumption of Liabilities section of the contract, including any liabilities to "any present or former employee." The Seller otherwise continued to be responsible for all liabilities "whether known or unknown, fixed or contingent, liquidated or unliquidated and secured or unsecured, whether arising prior to, at or subsequent to the [sale] date . . . and whether or not disclosed to the Buyer."

The Seller argues that the Buyer assumed liability for the salesperson's contract, titled "Franchise Agreement," under Sched-

ule 3.4 of the APA. The schedule lists specific personal property owned and leased by the Seller and being transferred to the Buyer, such as office equipment, inventory, technical documentation, and software contracts. Subsection c describes "software contracts" as including all agreements regarding the ownership and distribution of the software code, user documentation, and databases, including licenses, development contracts, distributorships, dealerships, and franchises.

This schedule clearly and unambiguously refers to software *assets* being transferred to the Buyer upon the sale. Regardless of whether the salesperson's contract is a typical franchise agreement "under which the business must be operated according to certain conditions and limitations imposed by the . . . franchisor," *Watson v. Waffle House*, 253 Ga. 671, 672 (2) (324 SE2d 175) (1985), the salesperson's commissions contract is not a "software contract" asset included in this schedule.

3. The Seller also argues that the salesperson's commissions contract was included in the parties' Assumption Agreement (an exhibit to the APA), under the more general term of "bona fide unpaid trade payables," for which the Buyer assumed liability without requiring a listing of specific items. The Buyer's vice president of finance and development submitted an affidavit in which he stated that the term "trade payable" in the accounting field means "a current liability of an amount certain for expenses incurred in the ordinary course of business, . . . limited to debts already incurred for which payment is due in the future." It does not include future commissions such as the salesperson's which are variable and uncertain. Further, commissions incurred but not paid before the balance sheet is created "would normally be allocated as a separate line item . . . typically listed as Commissions Payable." The Seller introduced no evidence to rebut this evidence that the salesperson's commissions contract is not a "trade payable."

The Seller argues that the Buyer knew about the salesperson's commissions contract. The Buyer does not dispute that it was aware the salesperson was receiving monthly commissions but points out that the Assumption Agreement provides that "[t]he Buyer shall have no responsibility for any liabilities or obligations of the Stockholder or for any other liabilities or obligations of Doris of any nature whatsoever which are not specifically included in the Assumed Liabilities, . . . whether or not disclosed to the Buyer."

Additionally, the contract contains a merger clause providing that the contract set forth "the entire agreement of the parties," which could "only be modified or amended by an agreement in writing. . . ."

> [T]he entire agreement clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement. Thus, if the contract contains a merger clause, a party cannot argue they relied upon representations other than those contained in the contract.

(Citation and emphasis omitted.) *Chhina Family Partnership v. S-K Group of Motels*, 275 Ga. App. 811, 812 (2) (622 SE2d 40) (2005). Thus, regardless of whether the Buyer knew about the salesperson's commission agreement, it is not liable for it unless it was included in the contract.

Because the commission agreement is neither a franchise agreement regarding software assets being transferred to the Buyer, nor a trade payable, and was not otherwise included in the contract, the trial court did not err in denying the Seller's and granting the Buyer's motions for summary judgment on those grounds.

4. The Seller argues that the Buyer must indemnify him for any sums he must pay to the salesperson, under the contract's indemnification clause. Given that the Buyer did not assume liability for the salesperson's contract, however, it cannot be liable to the Seller under the contract's indemnification clause.

### Case No. A08A1288

5. The salesperson appeals the trial court's denial of his motion for partial summary judgment as to liability. The Buyer responded that it is not liable to the salesperson, having paid valuable consideration to the Seller for the company assets. The Seller filed no responsive brief.

Based on our holding in Division 2, supra, holding that the Buyer did not assume liability for the salesperson's contract, the Seller and the salesperson had an enforceable contract that did not terminate when the Seller sold the business. Thus, the Seller's obligations under that contract continued. Accordingly, we must reverse the denial of the salesperson's motion for summary judgment against the Seller, and reverse the grant of summary judgment to the Seller against the salesperson.

Further, because the Buyer did not assume liability for this contract, we affirm the trial court's grant of summary judgment to the Buyer against the salesperson and affirm the denial of summary judgment to the salesperson against the Buyer.

*Judgment affirmed in Case No. A08A1132. Judgment affirmed in part and reversed in part in Case No. A08A1288. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 30, 2008 —
RECONSIDERATION DENIED OCTOBER 22, 2008.

*D. Richard Jones III, Julie A. Dlott*, for Wilkie et al.

*Joyce, Thrasher & Kaiser, Jeffrey R. Joyce, Stewart, Melvin & Frost, J. Douglas Stewart*, for 36747, LLC et al. and Loeb Consulting Services, Inc.