## A08A2360. OIL-DRI CORPORATION OF GEORGIA v. THOMPSON.

(677 SE2d 325)

ADAMS, Judge.

At issue is whether a mineral lease terminated when Oil-Dri Corporation of Georgia, the lessee mining company, ceased both mining operations on the property and royalty payments under the lease. The trial court concluded that the lease terminated effective April 1, 2004, and granted partial summary judgment to the lessor, Jeraldine R. Bulloch Thompson, on her declaratory judgment claim. Oil-Dri appeals, and we reverse because we find that the parties did not intend for the mineral lease to terminate under these conditions without notice and an opportunity to cure.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review of a grant of summary judgment is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

So viewed, the evidence shows that Oil-Dri, as lessee, and Thompson, as lessor, entered into a mineral lease, dated January 12, 1977, and amended as of January 1, 2000, giving Oil-Dri the right to mine and remove minerals from certain of Thompson's real property. In December 2005, Thompson notified Oil-Dri that she considered the lease to be terminated because from March 2004 until that time Oil-Dri had not mined the property or made minimum royalty payments. Oil-Dri responded that it interpreted the lease to allow it to calculate the minimum royalty payment due for the previous 21 months, remit such payment, and consider the lease to be in full

force and effect. Consistent with this position, Oil-Dri tendered the royalty payments to Thompson. Thompson maintains, and Oil-Dri does not dispute, that she has refused to accept and negotiate the tendered payment.

On November 1, 2006, Thompson filed a complaint for declaratory relief, equitable relief, and breach of contract asking that the trial court declare the lease to be terminated and claiming, among other things, that Oil-Dri used Thompson's property for its own benefit without compensation after March 2004. Thompson filed a motion for partial summary judgment asking that the trial court determine as a matter of law that the lease was terminated when Oil-Dri stopped making minimum monthly payments. The trial court granted Thompson's motion, concluding that the lease terminated effective April 1, 2004.

The underlying facts are generally undisputed and resolution of this dispute depends upon the correct interpretation of the lease. "The construction of a contract is a matter for the courts." (Footnote omitted.) *Danos v. Thompson*, 272 Ga. App. 69, 71 (1) (611 SE2d 678) (2005).

> In this State, contract construction involves three steps. First, is the language ambiguous? If not, the court enforces the contract. If so, the court next applies the rules of contract construction to resolve the ambiguity. If the ambiguity cannot be resolved, in the last step a jury must decide what the parties intended and what the ambiguous language means.

*Wilkie v. 36747, LLC*, 294 Ga. App. 179, 181 (1) (669 SE2d 155) (2008).

Oil-Dri is required to pay Thompson compensation under the lease. On the first day of every month, Oil-Dri "shall pay" a "minimum monthly royalty" of $200. Not later than the 20th day of each month, Oil-Dri is required to pay Thompson for minerals removed from the property the previous month in an amount based on the tonnage removed and the date mining commenced. The minimum monthly payment is applied against any sums due on account of the minerals removed from the property.

The lease does not have a scheduled termination date. The lease provides: "This lease shall be considered in force and the rights and privileges granted shall remain in force so long as the Lessee shall continue to mine said minerals or pay the minimum rental or royalty agreed upon." The lease also provides that Oil-Dri may at any time abandon the premises "and this lease to be thenceforth null and void" upon sixty days' notice to Thompson. The amendment to the

lease, entered into as of January 1, 2000, contemplates an outside date under which the property could be mined: "Lessee agrees to complete the mining of the subject property within six (6) years after the effective date of this Amendment."

The lease contains a provision addressing the consequences of Oil-Dri's failure to pay royalties:

> On failure to pay the rental[1] or royalty due after thirty days' written notice by registered mail to Lessee to pay the same, the Lessor may at his option declare this lease forfeited, and may re-enter and take possession of the premises, and this agreement shall be thenceforth at an end, except as to the collection of rentals then due; the Lessee to have the right to remove all machinery, fixtures, buildings and improvements placed or erected by Lessee upon said premises after payment of said rental. Before any forfeiture shall be attempted for any other cause, Lessor shall give Lessee sixty days' notice in writing by registered mail, stating the cause, in order that Lessee may remove the cause if it exists.

The lease further contemplates that Oil-Dri's right to mine is in its sole discretion:

> Lessee shall not at any time be under any obligation to commence or continue any mining or other operations, it being understood that Lessee reserves the right to commence, cease and resume mining or other operations permitted to be carried on by Lessee hereunder as Lessee, from time to time, chooses in Lessee's sole and exclusive direction.

Viewing the lease as a whole, we conclude that the parties did not intend that the lease be terminated upon Oil-Dri's failure to mine the property and pay minimum rent. See *Tachdjian v. Phillips*, 256 Ga. App. 166, 170 (568 SE2d 64) (2002) ("[t]he law favors a construction that will uphold the contract as a whole, and the whole contract should be looked to in arriving at the construction of any part"). It is true that the lease provides that it "shall be considered in force and the rights and privileges granted shall remain in force so long as" Oil-Dri mines the property or makes the minimum payments. This language implies that the opposite is true as well — the

---

[1] There is no payment contemplated by the lease that is specifically designated as "rent" or "rental" payments.

lease would not remain "in force" if Oil-Dri neither mined the property nor made the minimum payments, as was the case here. But if this provision was intended to allow Oil-Dri to unilaterally terminate the lease, as Thompson suggests, then it is inconsistent with the lease provision allowing Oil-Dri the right at any time "to abandon said premises and this lease to be thenceforth null and void," other than as to unpaid royalties, but only upon 60 days' written notice. See id. ("[i]t is axiomatic that we should avoid any construction that renders portions of the contract language meaningless") (citation and punctuation omitted).

Furthermore, forfeitures are not favored by the courts. See *King Indus. Realty v. Rich*, 224 Ga. App. 629, 631 (3) (481 SE2d 861) (1997). The lease does not expressly provide for termination or forfeiture of the lease upon Oil-Dri's failure to mine and make the minimum royalty payment. See *Fulton County v. Collum Properties*, 193 Ga. App. 774, 776 (1) (388 SE2d 916) (1989) (where "there are no express words of defeasance, forfeiture, or reversion, the words employed will be construed *as words of covenant*, and not words of condition; and the remedy for a breach thereof by one having the right to enforce the same would be an action thereon for damages, and not a forfeiture of the estate (or usufruct) for condition broken") (citation and punctuation omitted; emphasis in original). Additionally, the lease specifies that it is the "rights and privileges granted" that remain in force "so long as the Lessee shall continue to mine said minerals or pay the minimum rental or royalty agreed upon." It does not speak to a suspension of Oil-Dri's obligations, which include the lease requirement that it "shall pay" the minimum monthly royalty.

We conclude that the lease provision which controls here is the one which specifically addresses unpaid royalties and expressly contemplates Thompson's right to declare a forfeiture. This provision includes notice and a right to cure. Only upon "*failure* to pay the rental or royalty due *after* thirty days' written notice by registered mail to [Oil-Dri] to pay the same" (emphasis supplied) may Thompson declare the lease forfeited. If the notice Thompson gave Oil-Dri is deemed in full compliance with the lease, then Oil-Dri was afforded the right to cure and the record does not show that its tender of unpaid royalty payments was either insufficient in amount or untimely. If Thompson's notice was simply to inform Oil-Dri that the lease had been previously terminated, which the notice appears to be, then the notice had no effect. See, e.g., *Dude, Inc. v. Foamex, L.P.*, 269 Ga. App. 909 (605 SE2d 459) (2004) (default under terms of lease contemplated notice and additional cure period, notwithstanding breach). Rather, the undisputed facts fail to show that the lease had been previously terminated as Thompson asserts. It follows that

the trial court erred in granting partial summary judgment to Thompson.

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 10, 2009 —
RECONSIDERATION DENIED APRIL 10, 2009.
Mineral lease. Thomas Superior Court. Before Judge Altman.
*Alexander & Vann, John T. Holt*, for appellant.
*Bateman & Harden, Frederick L. Bateman, Jr.*, for appellee.